United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-30875
_____

MARCO OUTDOOR ADVERTISING, INC.,

                                        Plaintiff - Appellant,

                        versus

REGIONAL TRANSIT AUTHORITY,

                                        Defendant - Appellee,

CLEAR CHANNEL OUTDOOR, INC.,

                                Intervenor Defendant - Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

Before JOLLY, DAVIS, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     This cause arises under 42 U.S.C. § 1983.  Marco Outdoor
Advertising, Inc., ("Marco") contends that the Regional Transit
Authority ("RTA") deprived it of property without due process of
law when, in violation of the Louisiana Public Bid Law, La. R.S. §
38:2211, et seq. ("Public Bid Law"), RTA arbitrarily awarded an
advertising contract ("Contract") to an inferior bidder, Clear
Channel Outdoor, Inc. ("Clear Channel").  The district court held
that because the Public Bid Law does not apply to this Contract,
the state had created no property right in favor of prospective

bidders such as Marco,[1] and consequently, Marco, having no protected property interest, had failed to state a constitutional due process claim. The district court therefore dismissed the case for lack of federal question jurisdiction.

The issue presented and argued by the parties, both at trial and on appeal, is whether the Public Bid Law applies to this Contract (thereby creating a property interest), a difficult and unclear claim under Louisiana law. Marco contends that it applies; RTA and Clear Channel contend that it does not. We find it unnecessary to decide this question because we hold that, even assuming the Public Bid Law applies and creates a property interest in this Contract, Louisiana state courts provide an adequate procedural remedy for the alleged deprivation.[2] We therefore AFFIRM the dismissal of Marco's complaint for failure to state a federal claim.

I.

On August 6, 2004, RTA initiated Request for Proposals No. 2004-015, under which it sought sealed bids from advertising

---

[1] Under Louisiana jurisprudence, the Public Bid Law creates a property right in the highest responsible bidder to receive a contract that will generate revenue for a state entity. HTW Transp. Co., Inc. v. New Orleans Aviation Bd., 527 So.2d 339, 342 (La. App. 4 Cir. 1988); cf. Haughton Elevator Div. v. State ex rel. Div. of Admin., 367 So.2d 1161, 1165 (La. 1979) (creating a property right in the lowest responsible bidder to receive a public works contract).

[2] At the Court's request, the parties submitted supplemental briefs on this issue.

contractors for proposals that would generate revenue for RTA by placing advertisements on RTA's vehicles, transit shelters, and transit benches. RTA received bids from six contractors, including Marco and Clear Channel. The parties dispute whose bid is financially superior, that is, which will generate more advertising revenue for RTA. On May 24, 2005, in response to Marco's inquiries, RTA informed Marco that RTA planned to award the Contract to Clear Channel two days later on May 26.

Marco took action, however, and on May 25, Marco filed this 42 U.S.C. § 1983 suit against RTA in federal district court. Marco sought an injunction preventing RTA from awarding the Contract to Clear Channel and a writ of mandamus ordering RTA to award the Contract to Marco. In the district court and on appeal, Marco argues that its bid is financially superior to Clear Channel's bid, and that under the Public Bid Law, RTA must award the Contract to Marco, which allegedly submitted the best bid. Marco maintains that under the Public Bid Law, it has a property right protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. This constitutional question is the sole basis for federal question jurisdiction. Although no injunction was issued, the bidding process apparently came to a halt.

On August 23, 2005, following a two-day bench trial, the district court dismissed Marco's complaint for lack of jurisdiction. The district court concluded that the Public Bid Law did not apply to the Contract, and accordingly, that RTA was not

3

required to award the Contract to the most favorable bidder. Therefore, even if Marco submitted the best bid, it had no right under state law to receive the Contract and thus no property right in receiving the Contract. Consequently, Marco could not claim a deprivation of a constitutionally-protected property right by the RTA. Because the federal question basis of its law suit was eliminated, the district court dismissed for lack of jurisdiction. Marco now appeals.

## II.

As we have earlier suggested, we will assume for the purposes of this appeal that Marco has a property right in its bid. This is not enough, however. The Fourteenth Amendment also requires that the plaintiff, in order to establish a constitutional violation, prove that the deprivation of the property right occurred without due process of law. See Baker v. McCollan, 443 U.S. 137, 145 (1979).[3] Thus, even if the Public Bid Law applies to the disputed

---

[3] There is no merit to Marco's claim of substantive due process. Substantive due process "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). To state a viable substantive due process claim, "the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence." McClendon v. City of Columbia, 305 F.3d 314, 325 (5th Cir. 2002). As this Court observed in McClendon, "[t]he Supreme Court's discussions of abusive executive action have repeatedly emphasized that 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" Id. at 325-26 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992))(internal quotations omitted)). The plaintiff must therefore demonstrate that the abuse of power by the state official

Contract, and the state has thus created a protected property right in the bidding process for Marco, Marco must further show that the state has failed to provide Marco some legal process to challenge RTA's action. The due process claim before us relates only to the adequacy of procedures that the state provides to a property owner before it takes away the property.

Thus, for purposes of this appeal, the state may satisfy due process requirements by providing an adequate pre-deprivation remedy.[4] An adequate remedy requires that, before it acts, the state must provide notice and an opportunity for a hearing to the property owner, see Systems Contractors Corp. v. Orleans Parish Sch. Bd., 148 F.3d 571, 575-76 (5th Cir. 1998) (applying Mathews v. Eldridge, 424 U.S. 319 (1976)), for "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount,"

_____

"shocks the conscience." McClendon, 305 F.3d at 326 (quoting County of Sacramento, 523 U.S. at 846). Here, even if the Public Bid Law applies, RTA's decision to award the Contract to Clear Channel instead of Marco is not so arbitrary so as to "shock the conscience." See id. Accordingly, Marco does not have a viable substantive due process claim. The dissent, in reaching the opposite conclusion, fails to cite a single case where this Court or any court has found a substantive due process violation under similar circumstances.

[4] In some situations, however, a post-deprivation remedy will satisfy due process requirements if the deprivation results not from established state procedure but from a random and unauthorized action of a state agent. Parratt v. Taylor, 451 U.S. 527, 541 (1981), overruled in part not relevant here, Daniels v. Williams, 474 U.S. 327 (1986); see also Zinermon v. Burch, 494 U.S. 113 (1990); Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Hudson v. Palmer, 468 U.S. 517 (1984); Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005); Caine v. Hardy, 943 F.2d 1406 (5th Cir. 1991).

Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972). The "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, Dept. of Bus. Regulation of Fla., 496 U.S. 18, 37 (1990) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)). For example, a state court injunction available before the deprivation "of any significant property interest" constitutes an adequate pre-deprivation remedy. See id. at 36-37 ("[t]he State may choose to provide a form of 'predeprivation process,' for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment"); see also Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n, 515 U.S. 582, 587 (1995) (explaining McKesson); Harper v. Va. Dept. of Taxation, 509 U.S. 86, 101-02 (1993) (applying McKesson to Virginia's tax laws); Rex Realty Co. v. City of Cedar Rapids, 322 F.3d 526, 529 (8th Cir. 2003) (holding that notice of condemnation and availability of a state court injunction, writ of mandamus, and writ of certiorari in an eminent domain case satisfied due process); McKenzie v. City of Chicago, 118 F.3d 552, 554-58 (7th Cir. 1997) (holding that a state court injunction was an adequate pre-deprivation remedy in a condemnation case, where the property owner received notice 30 days before the demolition and could file an injunction that

6

automatically halted any demolition plans by the city).[5]

Here, the state provides unsuccessful bidders with adequate notice and hearing. Specifically, the state provides adequate notice when RTA announces a contract award, which puts losing bidders on notice that they will be deprived of any alleged property interest in the bid if they fail to take further action. There is no showing here that the notice in this case was inadequate. Furthermore, the state guarantees unsuccessful bidders the right to a hearing through the Public Bid Law, which authorizes any unsuccessful bidder to sue in Louisiana state court to enjoin the public entity from awarding the contract. See La. R.S. § 38:2220(B). According to the Louisiana Supreme Court, "Louisiana jurisprudence has long recognized that while a public body has some discretion in awarding public contracts, subject to judicial review, an unsuccessful bidder may sue to enjoin the public body

---

[5] Because the Supreme Court has specifically stated that a state court injunction may satisfy due process as an adequate pre-deprivation remedy, see, e.g., McKesson, 496 U.S. at 36-37, there is no merit to the dissent's assertion that due process requires a state entity to provide an administrative remedy. Nor are Systems or Haughton controlling in this case; unlike the case before us, Systems and Haughton were disqualification cases, that is, disqualification from having a bid considered. See Systems, 148 F.3d at 573; Haughton, 367 So.2d at 1164. In that context, Systems and Haughton addressed whether a state entity's administrative remedies satisfied due process requirements for exclusion of a bidder from the bidding process. See Systems, 148 F.3d at 575-76; Haughton, 367 So.2d at 1166. Here, however, we are not dealing with a disqualification case. As far as the record shows, Marco's bid was accepted and considered as one of the six bids. Marco does not argue that RTA has disqualified it from bidding on this Contract or on any future RTA contract.

7

from executing the contract or to set aside the award of the contract to another bidder when the public body acted arbitrarily in selecting the successful bidder." Airline Constr. Co., Inc. v. Ascension Parish Sch. Bd., 568 So.2d 1029, 1032 (La. 1990) (citation omitted). As the Louisiana Supreme Court noted in Airline Construction, the Louisiana Legislature amended La. R.S. § 38:2220 in 1979 to recognize expressly the right to injunctive relief when a public entity violates the Public Bid Law. Id. at 1032-33. Under the statute:

> The district attorney in whose district a violation of this Part [i.e., the Public Bid Law] occurs, the attorney general, or any interested party may bring suit in the [Louisiana] district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.

La. R.S. § 38:2220(B). There are no prerequisites that an aggrieved interested party must complete before bringing an injunction in Louisiana district court.[6]

---

[6] An interested party need not inform the Louisiana attorney general prior to bringing suit, as generally required under La. R.S. § 38:2220.3. La. R.S. § 38:2220.3 does not apply to actions brought by the district attorney, the attorney general, or an interested party under La. R.S. § 38:2220. See La. R.S. § 38:2220.1 ("It is the intent of the legislature in enacting R.S. 38:2220.1 through 2220.4 to authorize private citizens and other entities to institute a civil action against public entities to deter the construction of public works or the purchase of materials and supplies in violation of the provisions of R.S. 38:2211 et seq. The provisions of these Sections shall not be construed to

8

Because an unsuccessful bidder may seek an immediate injunction through a summary proceeding, and because the injunction may enjoin the execution of the contract, the injunction prevents the deprivation "of any significant property interest" and is therefore an adequate pre-deprivation remedy.  See McKesson, 496 U.S. at 36-37.[7]  The summary proceeding, together with RTA's

eliminate or reduce any causes of action or other forms of relief provided by existing law, including but not limited to suits authorized by R.S. 38:2220.").

Nor, in bids for RTA projects, must an aggrieved bidder exhaust RTA administrative remedies prior to bringing suit.  The RTA protest procedures state that "[a]ny person who is aggrieved in connection with the solicitation or award of a contract may protest to the Director of Procurement/TMSEL."  In Millette Enterprises, Inc. v. State, 417 So.2d 6 (La. App. 1 Cir. 1982), the Louisiana First Circuit Court of Appeals held that similar language in La. R.S. § 39:1671 was permissive rather than mandatory, such that an aggrieved party did not need to exhaust administrative remedies before filing suit.  Id. at 10.

[7] To the extent Systems suggested that state court injunctive relief is a post-deprivation remedy, see 148 F.3d at 576, the Supreme Court has indicated otherwise, see McKesson, 496 U.S. at 36-37.  Regardless, the Systems Court had already held that the state entity provided an adequate pre-deprivation remedy through prior notice and a separate hearing, see id. at 575-76, and given that an adequate pre-deprivation remedy is sufficient by itself to satisfy the requirements of due process, see Harper, 509 U.S. at 101, Systems' discussion of injunctive relief is dicta.

Because the injunctive relief provides Marco with an adequate pre-deprivation hearing, this case is clearly distinguishable from Parratt and its progeny.  In those cases, unlike the one before us, the deprivation occurred without any prior hearing.  See, e.g., Zinermon, 494 U.S. at 114-15, 120, 122 (complainant involuntarily held in mental hospital for five months without prior hearing); Hudson, 468 U.S. at 520 (complainant inmates' property intentionally destroyed by prison officer without prior hearing); Logan, 455 U.S. at 426 (complainant discharged from employment without prior hearing); Woodard, 419 F.3d at 350 (complainant charged excessive fees by court clerk without prior hearing);

9

announcement of the contract award, satisfies the elements of the due process prong of the Due Process Clause that are at issue in this case.

## III.

We thus conclude: We assume for the purposes of deciding this appeal that the Public Bid Law applies to Marco's bid and that Marco has properly alleged a property interest in the right to receive the Contract; nevertheless, we conclude that Marco's procedural due process claim fails. The Public Bid Law explicitly authorizes Marco to seek state court injunctive relief to enjoin RTA from awarding the contract to Clear Channel. For the reasons given, we hold that Marco has failed to show that it has been denied due process of law provided in the Fourteenth Amendment. Accordingly, the judgment of the district court dismissing the case for failure to state a federal claim is

AFFIRMED.

---

Caine, 943 F.2d at 1407-08 (complainant doctor's clinical privileges at hospital suspended without prior hearing).

WIENER, J., Circuit Judge, dissenting:


I respectfully dissent. I am convinced that the majority opinion misapprehends the nature of, or glosses over, Marco's substantive due-process claim, grounded as it is in the RTA's knowing and deliberate disregard of Louisiana's public bid law (and its own announced procedure), despite such law having been expressly incorporated by reference in the RTA's enabling act.

## I. ANALYSIS

The State's bid law has long been recognized as creating a constitutionally protected property interest in the entitlement of the lowest —— or, as in this case, the highest —— responsible bidder (hereafter, "best bidder") to be awarded the advertised contract.[1] One obvious purpose of the bid law is to protect the public fisc by ensuring that the people pay the lowest price available for qualified work (or, as here, receive the most revenue for the privilege granted)[2]; another is to protect the property right of the best bidder to be awarded the advertised contract. Thus, for a bidder successfully to assert a § 1983 due-process claim, he must establish that the contract at issue is subject to

---

[1] Haughton Elevator Div. v. Louisiana Ex Rel. Div. of Admin., 367 So. 2d 1161, 1165 (La. 1979). The State's bid laws can create a property interest in either the lowest or highest responsible bidder, depending on the nature of the contract at issue.

[2] Smith v. Town of Vinton, 43 So. 2d 18, 21-22 (La. 1949) (quoting Boxwell v. Dept. of Highways, 14 So. 2d 627, 631 (La. 1943).

the State's public bid law, that he is the best bidder, and that he has been wronged by the agency's awarding of the contract to another party. Marco's establishing of these elements would entitle it to pursue Fourteenth Amendment due-process claims under § 1983, both substantive and procedural. Even when, for today's purposes, I accept without granting that the panel majority has gotten the procedural due process facet of Marco's claim right, that procedural placebo, viz., Marco's pre- or post-deprivation access to the State's courts, falls far short of being a panacea for Marco's substantive due-process ills, much less the only available cure.

Instead of forthrightly deciding the sole legal issue addressed by the parties and by the district court, i.e., whether Louisiana's public bid law even applies to the RTA's letting of the instant contract (I believe that the bid law applies and would so hold on appeal), the majority leaves that question unanswered and merely assumes arguendo that these laws do apply and that Marco has established that it is the best bidder and thus entitled to due process protection.[3] Having thus set up the procedural due process strawman through such assumptions, though, the panel majority proceeds to knock it down, in disregard of Marco's substantive due

_____

[3] Marco's objective allegations, if proved, leave no doubt that its bid was easily the best of the six received by the RTA —— at least before the RTA massaged Clear Channel's bid to elevate it above Marco's and one other that also had topped Clear Channel's original bid.

12

process claim, by conclusionally declaring, without any discussion of the facts or analysis of the law, that the "RTA's decision to award the Contract to Clear Channel instead of Marco is not so arbitrary as to 'shock the conscience.'" According to the panel majority, then, solely because Marco had the option of resorting to state court (don't we all?), its entitlement to seek relief there after being arbitrarily and capriciously denied its best-bidder's right to be awarded the contract somehow satisfies the pre-deprivation administrative procedure that due process expressly requires. For the majority, then, the RTA's refusal to follow the presumably applicable state bid law —— and its own announced procedures —— which is designed to protect, inter alia, a best bidder's constitutional property right, is somehow not so unconstitutionally egregious as to warrant access to, and the attention of, the federal courts. In other words, just because we say so, the RTA's patent disregard of the substantive due process rights guaranteed to Marco under the United States Constitution cannot be rectified in federal court in a § 1983 action.

As I find the panel majority's reasoning to be fatally flawed, I too shall proceed (as does the panel majority) on the assumption that Marco is entitled to both procedural and substantive due process before it may be deprived of its conceded property right, and shall illustrate how Marco's constitutional right is violated.

Adverting to substantive due process solely in footnote 3 of its opinion, the panel majority conclusionally declares that "Marco

13

does not have a viable substantive due process claim." Yet, the majority never tells us why not. It simply stands mute as to the reasons for concluding that Marco has no substantive due-process claim. To me, that alone would justify a dissent. I shall do more, however, by explaining why I am convinced that Marco does indeed have a viable substantive due-process claim, which it is entitled to pursue in federal court § 1983.

As the majority explains, and I agree, "[s]ubstantive due process 'bars certain arbitrary, wrongful government actions....'" Here, Marco's substantive due process claim is supported by a plethora of discrete allegations of how the RTA arbitrarily and capriciously disregarded state law —— more accurately, how it affirmatively rejected the state bid law as totally inapplicable —— by knowingly thumbing its nose at Louisiana's bid requirements and, in an exercise of agency fiat, blatantly handing the contract to an inferior bidder after colluding with that bidder to make its bid the best. It is obvious to me that these shenanigans unquestionably resulted in the deprivation of Marco's constitutionally-recognized and constitutionally-protected property right, as the putative best qualified bidder, to have the contract awarded to it. Lest there be any doubt about the RTA's audacious euchring of Marco out of the subject contract, I reiterate here the RTA's machinations as alleged by Marco (which must be credited at this stage of the proceedings):

- The RTA's Request For Proposals ("RFP") for the

14

subject contract was not furnished to Marco despite its previous requests for notice of the initiation of any solicitation for transit advertising.

• Similarly, Marco was not informed of the RTA's pre-bid conference on the contract.

• Of six proposals received by the RTA, Marco's was patently the best from all standpoints (guaranteed payments, percentage of revenues, contractor media, bartered print and broadcast media, and marketing analysis), and Clear Channel's proposal was a distant third.

• Post-bidding, RTA subjectively evaluated the proposals with a previously-undisclosed, arbitrarily weighted formula, baldly adding $1.5 million to Clear Channel's proposal for non-monetary benefits over ten years (which one of the other contractors had also agreed to do yet got no "bonus" for) and adding another bonus ($1.7 million) for non-monetary benefits proposed by Clear Channel, which no other bidder was advised it could submit. Even with this "artificially enhanced figure," Clear Channel's score remained short of the 60 maximum points that only Marco's bid had achieved.

• Also post-bid, RTA assigned to Clear Channel a 10-point bonus for compliance with Disadvantaged Business Enterprises ("DBE") despite having stated that no such goals had been established for the subject project and despite obvious non-compliance by Clear Channel.

• When all of the foregoing post-bid machinations failed to move Clear Channel ahead of Marco, the RTA allowed Clear Channel (and only Clear Channel) to revise its bid by (1) increasing its guaranteed payment from $10,186,000 to $13,386,000, (2) increasing its estimated revenues by 40% above its original proposal, and (3) artificially inflating its bid above those of Marco and the original second-place bidders.

• After accomplishing the foregoing legerdemain, the RTA declared Clear Channel the best bidder even though — despite those post-bidding unilateral changes — Clear Channel's proposal <u>guaranteed</u> only $10,186,000, still more than $3 million less than Marco's guarantee.

Assuming, as we must, for purposes of the four-part test for

granting a TRO or preliminary injunction, that Marco could prove these allegations, they are quintessentially arbitrary and capricious, and more than sufficient to satisfy the element of likelihood of success, entitling Marco to such a restraint.

Typically, the focus of <u>substantive</u> due-process claims in the area of public bid laws is whether the awarding authority has arbitrarily or capriciously designated an inferior contender as the best responsible bidder. In almost every such case, the awarding authority acknowledges (or is at least aware) that it is subject to the bid law, but — at least allegedly — has failed to follow the statutory or regulatory bid rules. Here, in contrast, the RTA has denied from the outset that, in awarding this revenue-producing contract, it is subject to the state bid law <u>at all</u> and, as such, has insisted that its bidders have no constitutionally-protected property rights. The RTA insists further that, for its own reasons — or for no reason — it was also free to disregard its own bid proposal guidelines with impunity, simply because of the revenue nature of the contract it was awarding.

As noted, we are asked to decide whether Marco was arbitrarily denied its status as the best responsible bidder, allegedly accomplished by the RTA's capricious favoring of an inferior bidder to the exclusion of Marco, through its conceded disregard of the bid law and the refusal to follow that law and its own announced procedures by self-servingly labeling them as inapplicable. Indeed, to this day, that is the totality of what the RTA relies

16

on, viz., its (erroneously) asserted right to award the instant revenue contract without complying with the public bid law, <u>which is expressly made applicable to the RTA in its enabling statute</u>, and which incorporation by reference contains <u>no</u> limitations of applicability to public works and purchases of materials or supplies.

If, as I advocate, we were to remand, and the fact finder were to determine that Marco somehow was not the best responsible bidder, then Marco will have no protected property interest to enforce in a § 1983 action.  But the panel majority has conceded for purposes of today's decision, that Marco is the best responsible bidder.  As such, we must treat Marco as having a protected property interest that may <u>not</u> be abrogated by the whim (or worse) of the RTA —— at least not without violating Marco's substantive due-process rights.  It smacks of Lewis Carroll to say that the RTA did not act arbitrarily and capriciously despite (1) self-servingly declaring itself free of the restrictions of the bid laws, (2) conducting its bid process in knowing disregard of its own announced procedures, (3) colluding with the <u>third</u> best of six bidders to enhance that bidder's proposal <u>post</u>-submission, i.e., after "going to school" on Marco's bid, and (4) ultimately awarding the contract to its favored bidder, regardless of its own pre-award guidelines.  I cannot see how this willful —— and thus arbitrary and capricious —— behavior does not shock the majority's conscience:  Even as jaded as I have become from living in New

Orleans and seeing almost daily media reports of this kind of behavior by local agencies, the RTA has managed to shock my conscience in this instance.

## II. Conclusion

As I see it, the panel majority skirts the sole issue that controlled this case in the district court and that the parties have briefed and argued on appeal, viz., whether the enabling act of the RTA, in incorporating the Louisiana public bid law, makes that law applicable to the award of this particular RTA contract —— a question that the majority labels "a difficult and unclear claim under Louisiana law." With respect, I do not find it that difficult, because I stop with the plain wording of the RTA's enabling act and refrain from trying to divine unspoken legislative intent in the face of clear and unambiguous statutory language. We should not be "lawyering" the case as an advocate for one of the parties. I acknowledge that it is generally preferable to avoid reaching a difficult issue of law by resolving a case on a clear and easy one —— and that may well be what the majority means to do here. But, I cannot see that we have such a path available to us today. Our only options are to hold that Louisiana's bid law does or does not apply here; and then, depending on our answer, either (1) reverse and remand or (2) affirm. We should not tiptoe around that issue by, sua sponte, going off on the nature of Marco's clearly established due process, property-right claim and latching onto a procedural, state statutory standing provision as a means of

18

disposing of this appeal.  It is for these reasons that I cannot concur in the panel majority opinion, and instead must respectfully dissent.