SAVOIE, Judge.
This is a suit by a prospective bidder on a contract to provide insurance claims processing services. The suit originally sought a temporary restraining order, preliminary and permanent injunctions, mandamus and declaratory judgment. The suit was amended to seek monetary damages, penalties and attorney’s fees.
*836 FACTS
For approximately six years prior to 1979, CNA had handled the administration of claims under the State Employees Group Benefits Program pursuant to a contract negotiated with the Board without public bid. On November 6, 1979 the Attorney General of the State of Louisiana issued an opinion stating that the services performed by CNA were subject to the new Louisiana Procurement Code, LSA-R.S. 39:1551 et seq., and thus had to be let for public bid. Opinion of Attorney General No. 79-1215. Pursuant to this opinion the Board sent out invitations to bid on the ASO contract for insurance claims processing services. Only two companies responded to this First Invitation to Bid, CNA and Millette. At the first bid opening, Millette was the low bidder. Because of the great disparity between Millette’s and CNA’s bids and the absence of other bids by which to compare them, the Board had little confidence in its ability to take action on either of the two bids; therefore, the Board decided to refuse all bids and issue a second invitation to bid.
The Board decided to seek outside help in evaluating and revising the bid specifications and engaged Tillinghast and Perry for this purpose. Perry was informed by Dr. James McElveen, executive director for the program, that the Board wanted Tillin-ghast to revise the specifications where appropriate and to expand the bid list so that additional qualified bidders would respond. There was no discussion about any specific qualifications for the bidders nor about whether experience with a “self-funded, self-insured” account should or would be required.
The first invitation had required that bidders have five years experience in claims administration and currently provide claims processing services to at least one employer-sponsored client with a group size of 10,000 covered employees. The second invitation, pursuant to Tillinghast’s and Perry's proposals, differed in that it required bidders be currently providing processing services to one self-insured or self-funded medical expense benefit plan of 10,000 employees as opposed to an employer-sponsored plan. The Board received four bids on the second invitation, including bids from CNA and Millette. In its bid Millette requested that the Board waive the self-insured/self-funded requirement. CNA was the highest bidder and Millette was the lowest; however, out of the four bidders CNA was the only bidder with self-insured benefits plan experience. All other bidders only had experience in employer-sponsored programs and, for this reason, the Board awarded the contract to CNA on November 24, 1980. Millette sent the Board a letter on December 3,1980, protesting that it was the low bidder and should have been awarded the ASO contract. The Board responded by informing Millette that it had not met bid specifications.
Before the contract could be signed, Mil-lette and Bartels brought suit seeking a temporary restraining order, preliminary and permanent injunctions, mandamus and declaratory judgment. Millette alleged that it was denied due process because its bid on the first invitation was refused without allowing it to defend its fiscal responsibility. The first bid invitation was issued November 6, 1979, and the second bid invitation was issued on September 25, 1980. Millette contended that the new Procurement Code, LSA-R.S. 39:1551 et seq., came into effect on July 1, 1980, and therefore the second invitation to bid issued by the Board was illegal because the authority to issue bids under the Procurement Code is given to a “central purchasing agency.” Plaintiff further contended that the requirement that bidders be currently providing processing services to a self-insured or self-funded expense benefit plan was arbitrary and capricious, and was imposed for the purpose of creating a “closed specification” that excluded all bidders except CNA. Millette also alleged that these bids had been discussed in a private meeting of the Board’s administrative committee, contravening LSA-R.S. 42:4.1 et seq., the “Open Meetings Law.”
The instant suit was filed on December 19,1980, and a temporary restraining order was issued the same day. Testimony relative to a preliminary injunction was re *837 ceived on December 29, 1980, and on December 30, the Board resolved to offer no opposition to the request for a preliminary injunction enjoining the signing of the contract between the Board and CNA. The Board further resolved to handle the claims administration duties itself, rather than give the job to CNA or Millette. The preliminary injunction issued on January 5, 1981.
Millette subsequently supplemented its petition to assert a claim for money damages, alleging bad faith in the actions taken by the Board in connection with the solicitation and selection of bids. CNA and the Board filed dilatory exceptions pleading the objections of prematurity and vagueness and peremptory exceptions raising the objection of no cause of action in response to Millette’s original petition for injunctive relief. CNA and the Board also filed peremptory exceptions raising the objection of no cause of action in response to Millette’s supplemental and amending petition seeking damages, penalties and attorney’s fees. The trial court sustained the exceptions pleading the objection of no cause of action and Millette appealed this judgment with respect to only the exceptions filed by the Board. This court reversed the judgment of the trial court insofar as it maintained the peremptory exception pleading the objection of no cause of action for and on behalf of the Board and remanded the case for further proceedings. Millette Enterprises, Inc. v. Louisiana through Division of Administration and Board of Trustees of State Employees Group Benefits Program 417 So.2d 6 (La.App. 1st Cir.), writ denied, 417 So.2d 363 (La.1982).
Millette then filed a second supplemental and amending petition adding Perry and Tillinghast as defendants. After trial on the merits, judgment was rendered against the Board in the amount of $15,000 representing reasonable expenses incurred by Millette in preparation of its response to the first bid solicitation and dismissed all remaining claims against all defendants. Millette is now appealing. The State neither appealed nor answered Millette’s appeal.
ASSIGNMENTS OF ERROR
Millette contends that the trial court erred in:
1. holding that the “self-insured or self-funded” experience criterion in the second bid invitation was reasonable;
2. failing to find that Millette was arbitrarily and capriciously excluded from the second invitation to bid and in failing to hold the Board and/or Tillinghast liable for damages for failing to award Millette the contract;
3. failing to find that Millette was entitled to recover lost profits; and
4. failing to award Millette attorney’s fees in accordance with LSA-R.S. 42:4.1, et seq.
DISCUSSION
LSA-R.S. 39:1571 provides that “[A]ll rights, powers, duties, and authority relating to the procurement of supplies, services, and major repairs now vested in or exercised by any state governmental body under the several statutes relating thereto are hereby transferred to the central purchasing agency.” This section, as part of the new Louisiana Procurement Code, became effective July 1, 1980. The Second Invitation to Bid was issued by the Board on September 25, 1980. LSA-R.S. 39:1677 provides that “[i]f it is determined prior to award that a solicitation or proposed award of a contract is in violation of law, then the solicitation or proposed award shall be cancelled.” Prior to 1982 a public entity could reject any and all bids without cause. Milton J. Womack v. Legislative Budgetary Control Council, 470 So.2d 460, 463 (La.App. 1st Cir.1985). Thus it is clear that the Board could reject all bids received pursuant to the first invitation to bid without challenging the fiscal responsibility or ability to perform under the contract.
Because the second bid invitation was issued directly from the Board and not by the Central Purchasing Agency as required by the Procurement Code (LSA-R.S. 39:1551 et seq.) any contract awarded *838 thereunder would have been absolutely null and void. The Public Bid Law/Louisiana Procurement Code provides no recovery to an unsuccessful bidder when a contract is solicited or awarded in violation of the law. The remedy is to have the contract can-celled or declared null and void. Thus even if Millette had been a qualified bidder and even if Millette had proven the Board and Tillinghast had arbitrarily and capriciously “created a closed specification” the only remedy is to have the contract declared null and void, which it was. Millette was an unqualified bidder for a contract which could not legally be awarded. Even if the plaintiff were entitled to lost profits, which it is not, there could not have been any lost profits since there could not have been a valid contract under the second invitation to bid.
Further, we agree with the trial court’s written reasons for judgment and find that plaintiff failed to meet its burden of proof in its allegations of being arbitrarily and capriciously excluded under the second bid requirements. The remaining assignments of error presume the legitimacy of the second invitation to bid. Since we hold that invitation to be illegal the remaining assignments are moot.
DECREE
For the above and foregoing reasons the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.